# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, | ) |
| Defendant. | ) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

## STATEMENT OF THE CASE

1. This is a civil action under Sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, against The Guardian Life Insurance Company of America ("Guardian Life" or "Defendant"). The United States seeks to recover costs incurred in response to the release or threatened release of hazardous substances into the environment at or from the Widefield PCE Superfund Site located in Colorado Springs and Security, El Paso County, Colorado (the "Site"). The United States also seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendant is jointly and severally liable for any further response costs incurred by the United States in connection with the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and pursuant to 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this judicial district under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c), because the releases or threatened releases that give rise to the claims occurred in this District, Defendant may be found in this District, and the Site is located in this District.

## DEFENDANT

4. Defendant Guardian Life is a New York corporation that conducts business in Colorado.

5. Guardian Life is a "person" within the meaning of Sections 101(21) and 107 of CERCLA, 42 U.S.C. §§ 9601(21) and 9607.

## STATUTORY BACKGROUND

6. Section 104 of CERCLA, 42 U.S.C. § 9604, provides that whenever any hazardous substance is released into the environment, or there is a substantial threat of such a release into the environment, the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of, and provide for remedial action relating to, such hazardous substance. The President's authority under Section 104 has been delegated to EPA.

7. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in relevant part, provides that subject only to the defenses set forth in Section 107(b):

> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, …
>
> from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
>
> (A) all costs of removal or remedial action incurred by the United States Government … not inconsistent with the national contingency plan.

8. Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides that in any action for recovery of costs under Section 107 of CERCLA, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## GENERAL ALLEGATIONS

9. The Site is located in Colorado Springs and Security, El Paso County, Colorado, and comprises a former dry cleaners at 3217 South Academy Boulevard in the Mission Trace Shopping Center ("Shopping Center"), contamination of the surrounding soil and groundwater, and contamination of the Widefield Aquifer.

10. An underground plume of groundwater contaminated with tetrachloroethylene (also known as perchloroethylene, PERC, or "PCE") extends downgradient from the Shopping Center over one mile southwest to municipal drinking water wells in the Widefield Aquifer near South Academy Boulevard.

11. Defendant Guardian Life owned the Shopping Center from 1986 to 1993.

12. From 1986 to 1993, operators of a dry cleaning business d/b/a King's One-Hour Cleaners ("King's Cleaners") leased building space from Defendant at 3217 South Academy Boulevard at the Shopping Center.

13. PCE was used as a cleaning solvent in on-site dry cleaning operations at King's Cleaners from at least 1986 until dry cleaning operations ceased in 2010.

14. Use of PCE in dry cleaning at King's Cleaners generated waste contaminated with PCE during the time Defendant owned the Shopping Center.

15. On information and belief, PCE and waste contaminated with PCE were stored at King's Cleaners during the time Defendant owned the Shopping Center.

16. On information and belief, PCE and waste contaminated with PCE were disposed of at King's Cleaners through discharges, spills, leaks, overflows, dry cleaning machine malfunctions, and/or other activities during the time Defendant owned the Shopping Center.

17. As a result of the operations and storage, handling, and disposal practices at King's Cleaners, PCE contaminated the soil and groundwater at the Site.

18. PCE and breakdown products of PCE (including cis-1,2-dichloroethane, trichloroethylene ("TCE"), and vinyl chloride) were detected in the soil and groundwater below and in the vicinity of King's Cleaners. PCE migrated through groundwater in a southerly direction and reached the Widefield Aquifer and drinking water wells S-14, CS-8, CS-10, and CS-13 in Security.

19. Drinking water wells S-14, CS-8, CS-10, and CS-13 draw water from the Widefield Aquifer. The Widefield Aquifer supplies drinking water to thousands of people in Security and surrounding communities.

20. The Security Water District, which operates wells S-14, CS-8, CS-10, and CS-13, monitors public drinking water for PCE. The Security Water District detected PCE in well S-14 in 2003. Continued testing showed that PCE levels in well S-14 were increasing. In 2008, PCE

levels in well S-14 exceeded the national limit for PCE in drinking water established by EPA pursuant to the Safe Drinking Water Act. *See* 40 C.F.R. § 141.61 (listing the maximum contaminant level for "tetrachloroethylene"). PCE levels in well S-14 repeatedly exceeded the national limit thereafter, and the Security Water District was forced to take well S-14 out of service.

21. The Security Water District detected PCE in drinking water wells CS-8, CS-10, and CS-13 in 2008 and thereafter. PCE levels exceeded the national limit for PCE in drinking water at well CS-8 in 2010 and at well CS-10 in 2009 and 2010.

22. Exposure to PCE can cause neurological effects, liver problems, reproductive harm, and other serious health effects. EPA has characterized PCE as likely to be carcinogenic to humans by all routes of exposure.

23. The Colorado Department of Public Health and Environment ("CDPHE"), after consultation with EPA, performed an investigation to determine the source of the PCE contamination of the drinking water wells and to characterize the extent of the underground plume of PCE. As part of its assessment, CDPHE installed two dozen groundwater monitoring wells and took groundwater and soil samples and analyzed the data. CDPHE found that there had been a release of PCE to groundwater from King's Cleaners, and that King's Cleaners was the probable source of the PCE contamination of the drinking water wells.

24. CDPHE and the Security Water District requested EPA's assistance with addressing the contamination of public drinking water supplies. In 2011, EPA issued an Action Memorandum in which it determined that releases or threatened releases of hazardous substances

from the Site presented a threat to public health, welfare, or the environment and that a time-critical removal action was required.

25. EPA performed a removal action which consisted of construction of a drinking water treatment facility capable of removing up to 99 percent of PCE from the drinking water, and installation of pipe to connect the treatment facility to the affected wells. EPA gave the Security Water District permission to operate the completed treatment facility in April 2014.

26. CDPHE addressed PCE contamination at King's Cleaners pursuant to its state hazardous waste corrective action program. Cleanup measures included excavation of PCE-contaminated soil from the subsurface of King's Cleaners and reporting of PCE levels in groundwater samples.

27. This Court approved and entered a consent decree on April 25, 2018, in which the El Paso County Retirement Plan agreed to reimburse the United States $420,000 for Site responses costs. *See* United States v. El Paso County Retirement Plan, No. 18-cv-00552-RM-KMT, ECF No. 20 (D. Colo.).

28. The United States has incurred, and continues to incur, unreimbursed costs relating to the time-critical removal action at the Site. As of August 31, 2017, and accounting for the settlement described in paragraph 27, EPA has incurred at least $3,032,330.84 in unreimbursed response costs.

## CLAIM FOR RELIEF

29. The allegations of Paragraphs 1 through 28 are realleged and incorporated herein by reference.

30. The Site is contaminated by "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including PCE, which is a listed hazardous substance pursuant to 40 C.F.R. § 302.4.

31. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

32. King's Cleaners is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

33. On information and belief, Defendant was an owner of a facility at the time of "disposal" of "hazardous substances," including PCE, at the Site and from King's Cleaners, within the meaning of Sections 101(14), 101(20), 101(29), and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(20), 9601(29), and 9607(a)(2).

34. There have been "releases" or "threatened releases" of "hazardous substances" into the environment from the Site and King's Cleaners within the meaning of Sections 101(14), 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(22), and 9607(a).

35. As a result of releases or threatened releases of hazardous substances from the Site and King's Cleaners, the United States has incurred unreimbursed response costs, and continues to incur response costs, within the meaning of Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a).

36. The response action taken and response costs incurred at the Site were not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. Part 300.

37. Pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), Defendant is jointly and severally liable for all unreimbursed response costs, plus accrued interest, incurred and to be incurred by the United States in connection with the Site.

38. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendant is jointly and severally liable for all further response costs incurred by the United States in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court:

A. Order Defendant to reimburse the United States for all response costs incurred and to be incurred in connection with the Site, including interest thereon;

B. Enter a declaratory judgment that Defendant is liable for all further response costs, including interest, to be incurred by the United States for response actions in connection with the Site and any area to which the hazardous substances from the Site have migrated;

C. Award the United States the costs of this action; and

D. Grant such other and further relief as the Court deems just and proper.

Dated: August 8, 2019      Respectfully submitted,

THOMAS A. MARIANI, JR.
Section Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

- 9 -

/s/ *Nicholas Morales*
NICHOLAS MORALES
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Telephone:  (202) 616-8860
FAX:  (202) 514-0097
E-mail:  Nicholas.Morales@usdoj.gov

*Attorneys for the United States of America*

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2019, the foregoing Complaint was filed electronically with this Court using the CM/ECF system. Notice of this filing will be sent by prepaid first class mail to the authorized agent to accept service:

Corporation Service Company (CSC)
1133 Avenue of the Americas
New York, NY 10036
corpservices@cscinfo.com

*Authorized Agent for The Guardian Life Insurance Company of America*

/s/ *Nicholas Morales*
NICHOLAS MORALES